Thank you. This case presents... Counsel, would you state your name for the record? Thank you. Doug Lind, attorney for plaintiff appellant. Thank you. This case presents two main issues for the district court. The first is, did the district court commit reversible error by ordering plaintiff appellant to post a FRAP 7 bond that plaintiff appellant cannot afford? And did the district court commit reversible error by purporting to enjoin plaintiff appellant's appeal unless it posts a bond under FRAP 7? I just want to give the Court just a very brief overview of the facts. In this matter, it seems undisputed that the plaintiff appellant has an inability to pay the amount of the bond required. There's a contention that the evidence of this is insufficient, but there's certainly no contrary evidence. Well, how could the other side provide contrary evidence? Through a judgment debtor exam. They could very easily or through any sort of asset search. Okay. But if the district court says you're going to have to pay a bond, isn't it your obligation to come forward and say, I can't pay that bond? We did. Then what's the evidence? The evidence is through two declarations submitted by the president of the plaintiff appellant. Well, the district court found that that wasn't enough. Why weren't financial documentations provided to back up that generalized statement that this bond is unaffordable? Sure. As indicated, the plaintiff appellant has no bank accounts. There are no financial documents, per se. So the plaintiff appellant is in a position of having to prove a negative. In other words, we don't have the ability to pay this. Well, did your declaration say that he had no bank accounts, he had no assets? He wasn't able to secure any loans? He couldn't hire a bondsman? Was there anything other than saying, I can't pay it, that would give a judge some basis to say that this appellant bond is two owners, other than just a declaration? There's a few matters. There's the declaration itself, which states on numerous occasions that the plaintiff can't pay it. The second point is there is a judgment that was issued previously of $130,000. There was no stay on that judgment. And there's no assets to collect against. There's no action in that regard in any way, shape, or form. We have the two declarations, and they are not very helpful. If any bond is imposed, it should be a bond of $2,000, which Figure 8 would be able to pay. So claiming that you have no assets doesn't really help us here, because clearly they've got something, because he said he can pay $2,000. But in the second declaration, he says one-tenth of the $130,000 figure, which would be $13,000, would lead to ruination. So evidently, they have something between $2,000 and $13,000. I mean, this is, I have to say, counsel, that's not terribly helpful. Okay. Either one of those figures, the bond issued is well in excess of that. Right. But we have no basis for these figures. I mean, they're just sort of just numbers. Unfortunately, that's the nature of the plaintiff's business. The real salient point on that is this. The requirement that the Court must consider the appellant's financial ability to post a bond has been described as a due process requirement. And the problem is, is that there's no standards which the Court is required to evaluate in making that determination. And so ultimately What did you provide him with? So that he could make an evaluation. I mean, I have relatives. If they had to pay $50 for a meal, they'd say, I'm ruined. I don't know how to put this statement in context in terms of, well, even if when we have people that proceed pro bono on appeal and stuff like that, where they don't have to pay costs, you know, they say that they don't have any money, they don't have any bank accounts, they don't have any assets, you know, there's at least something before we say, OK, well, we're going to let you go ahead and proceed with that cost. Well, some guidance in that regard would be helpful, definitely, especially when we're dealing with what's been called due process concern of posting a bond. And I can assure you that any such standard could be met by the plaintiff. If there's a standard that's established in this case as to what is appropriate evidence, it could clearly be met. And I don't even think there's a really dispute about it. And the way that we can demonstrate there's no dispute about it is they haven't made any effort. They're simply saying that the evidence is insufficient. And the plaintiff's point is this. If we're talking about due process concerns, there needs to be some standard. There needs to be some target that we have to hit in order for the court to say, well, OK, you haven't met the standard. Counsel, if you had to post a $50,000 bond, is that something that your client has to put out dollar for dollar? Or can you go to a bondsman and put down 10%? No. That only works for a criminal bond. For the appellate bond on a civil judgment, it's essentially dollar for dollar. It's dollar for dollar. There are bonding companies that will do it on a civil. But you've got to have so many assets that there's kind of no risk for the bond company. Yes. And one other point on this that I wanted to make is that if we look at the district court's analysis of this issue of the financial ability to pay, and there's been argument that, well, the evidence we submitted just isn't sufficient, let's look at the evidence that the court found to be sufficient in setting the amount of the bond. The appeal was fully briefed, entirely briefed. There's no more work to be done other than argue, oral argument. And the district court just blanketly and blindly accepted the defendant's figures that they will be required to incur $50,000. And that's not the same reasoning. Is there a possibility that you're liable? If your client loses on appeal, if we were to authorize the appeal, do away with the bond, and affirm the judgment, is your client liable for the fees on appeal as well? In other words, if we proceed on the appeal and we lose, do they get prevailing parties? Yes, absolutely. Okay. All right. So there are additional costs here that may result against your client. Sure. And there's additional work. But my point is this. We're dealing with one court exercising its discretion in a matter that implicates  And on one side, when it's evaluating the case, it's evaluating the case in a way plaintiff's evidence says, no, that's just not sufficient. And on the other side, when it's evaluating the defendant's evidence, it just buys it. That's not fair. And it's not fair when we're talking about the fundamental right to appeal. I want to reserve my time. We have two minutes left. I just want to make one quick point, which is the second factor is the risk of nonpayment. And that must be read in conjunction with the first factor, which is the ability to pay. So the risk to evaluate is not whether the appellant will be financially unable to pay. It's whether the plaintiff-appellant will hide assets or refuse to pay. And again, there's absolutely no showing in that regard. And specifically, the plaintiff has stated, truthfully, if you lose, you can have the whole company. And that evidence is undisputed in this matter. Okay. Thank you. Thank you, Mr. Lind. You can reserve the rest of your time. Thank you. May it please the Court, Tom Shelberg for the appellees, Wicked Fashions, Dr. J. Zink and Fashion Studios, LLC. It seems to me that figure eight is arguing, in effect, that FRAP 7, whose whole purpose is to protect an appellee against the risk of nonpayment of costs on appeal by an unsuccessful appellant, can be subverted by an Ipsy-Dixit declaration with no supporting documentation that says that the appellee would not be able to pay a bond. The appellant, rather, would not be able to pay a bond. Now, it simply can't be the case that the due process concern that counsel brought up, just obviates the need for anybody to provide anything more than an unsupported declaration. In fact, I would submit that the due process concern, if anything, enforces the need for and puts the appellant on notice that he or she needs to provide that kind of detailed information if he or she wants to avoid having a bond imposed. And there's actually been no court that has accepted the kind of declaration that figure eight submitted here as evidence of financial inability to pay. Absolutely none, starting with- Was it appropriate to set a bond? And the second portion is the one I'd like you to address and assume that it was appropriate to set a bond. Was it appropriate to set a $50,000 bond? I believe it was. That number was supported by a declaration of a partner in my firm based on substantial experience in appeals in copyright cases. And of course, it is only a good faith estimate. That's the best you can do. But here we had a copyright case in which there's local council costs as well as out-of-town travel. And I think that, if anything, $50,000 could have been a relatively modest estimate of that. And certainly in keeping with the awards of appeal bonds or in copyright cases that we looked at, as well as our own experience. So that was the basis for it. And I think, again, there's a real difference between, in terms of the evidence necessary to support an estimate, a good faith estimate, and the evidence that an appellant needs to come forward as to his, her, or its own financial status, which is entirely at his command. And I think because of that, I mean, there was a case a couple of years ago in the Eastern District of New York, Curtis against Bushman, where the judge said that plaintiffs conceded the issue of ability to pay by declining to provide admissible evidence as to their financial state. It just beggars belief that somebody faced with the possibility of this bond being imposed, who really lacked the ability to pay it, would simply blow off the opportunity. And in this case, of course, we had an attorney's fees award under Section 505 of the Copyright Act, as to which one relevant factor could be the financial status of the party. And again, figure eight in that instance declined to submit any credible evidence as to its financial state. And as we noted, this is not a pro se party proceeding on a bare bones litigation. This litigation has been vigorously litigated, extensively litigated. So this notion, if you get to the point where an appeal bond is being considered, I would think it would, if it really is the case that there's absolutely no ability to pay it, it would be incumbent on them to come forward with that evidence. It's certainly not a question of proving a negative. Counsel, in the documentation you provided to the district court for the underlying attorney's fees question, what was the range on the attorney's fees that you provided in the documentation? The range of? Attorney's fees that the district court awarded. I'm sorry, the dollar figure. Oh, the dollar figure was $139,000? Right, that was the total. What was the range on the hourly rates? Hourly rates, I believe, ranged from somewhere in the $250,000 to probably $600,000 range. You didn't provide any estimate other than just the naked $50,000, did you? I mean, you didn't break that down into, say, it's going to take 80 hours of attorney time plus paralegals, plus travel, plus local counsel. Here's how we get the $50,000 easily. No, that was not done. Again, that was, in our experience, that's the custom, that you simply look at similar cases and, you know, come up with a rough estimate, because anything other than that would be, you know, speculative. I'm not familiar with the document itself, other than that the $50,000 was proposed. But did it say, you know, I do this type of work and compare this to other cases and similar type of cases and base it upon that? Or are we just saying he's an experienced lawyer and he knew what he was talking about? I believe that the declaration of my partner stated something to the effect that, you know, based on our experience and the lawyers involved and essentially the experience of appellate litigation in copyright cases, that that's a good thing. Had you already filed the briefs, your responsive brief in our court when you sought the appeal bond? We had not. How long was the principal brief, do you remember? Had that brief been filed? I do not recall the length of the brief at this point. It is now filed, though. Oh, yes. So we have costs in that appeal and we have costs in this appeal. That's correct. Yeah, oh, again, I just would like to emphasize on the due process notion. The Supreme Court in U.S. against McCullum back in 1976, you know, made it clear that due process does not, number one, establish an absolute right to an appeal. And number two, that equal protection doesn't require that all litigants be placed in exactly the same position, have absolute equality or precisely equal advantages. And so, of course, the right to appeal can certainly be burdened. But the question is whether it can be impermissibly burdened. Well, my recollection of that case that says you don't have a right to appeal, it's separate when the State or the government sets up an appeal. In other words, it's you don't have an absolute right to appeal, but once you allow appeals, then there's due process requirements with respect to how you treat people with respect to appeal. And equal protection, sure, sure. Litigants have to be received essentially equal treatment, but, again, they don't have to be, you know, as the language was, absolute equality or precisely equal advantages. And certainly, you know, FRAP 7, you know, the fact that you can't impose a bond, you know, the rules provide that a bond may be imposed certainly suggests that it may be, you know, permissible to burden the right to appeal to that extent. But the courts, and I think you even told us in your brief, the Court of Appeals decides whether it dismisses the appeal. Oh, absolutely. We make no weak. And so we have discretion in that. So the rule, even the rule is not interpreted in such a way that if you can't post it, you lose your appeal. That's correct. The appeal that's pending is both as to the attorney's fees and to the merits? Is that right? That's correct. The merits appeal was stayed when But do the briefs address also the amount of the attorney's fees, or does it only challenge the merits? Oh, I'm sorry. The award of attorney's fees under the Copyright Act was never appealed. Was not appealed. So the underlying question is only as to the merits of the copyright question. Correct. I see my time is about to run out if we have no other questions. Thank you, Mr. Shelberg. Mr. Lynn. Thank you, Your Honor. Yes, we did not appeal the award of the attorney's fees or the amount fees. It ultimately is a feudal act. With respect to the timing of the briefing. Counsel, if you take the position that you're not going to appeal whether the attorney's fees were $350 to $600 an hour, doesn't that kind of give us a ballpark in terms of this person's experience and where maybe they didn't dot the I's and cross the T's, but $50,000 doesn't sound unreasonable given those kind of fees that are being charged. The entire case below, which the defendant, as the colleagues keep saying, was vigorously litigated and vexatiously litigated and all sorts of things, was $140,000. So the notion that essentially reformatting the briefs on the summary judgment gets you up to $50,000 is, I think, aggressive. Ultimately, this is a case, the underlying appeal is fully briefed. And the fact that the defendant appellees want to proceed as to this bond issue, which is going to engender another hearing as to the effect of this bond on the appeal, rather than simply proceed with a fully briefed appeal, it simply needs to be argued and decided upon, I think tells everybody exactly what's going on here. There's an appellate issue that the plaintiffs feel strongly about and the defendants are trying to avoid through the use of a bond mechanism. And ultimately, that is not the purpose of FRAP 7, and that is not consistent with due process. Okay. Thank you, Mr. Lind. Thank you. I thank both counsel for the argument. The case is submitted. And with that, the court has completed its docket for today and we stand in recess.
judges: Benavides, Bybee, Nguyen